The STATE of Ohio, Appellee,

v.

ECKLES, Appellant.

[Cite as *State v. Eckles*, 173 Ohio App.3d 606, 2007-Ohio-6220.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 07 BE 12.

Decided Nov. 14, 2007.

Christopher M. Berhalter, Belmont County Prosecuting Attorney, and Helen Yonak, Assistant Prosecuting Attorney for appellee.

David Bodiker, Ohio Public Defender, and Attorney Sheryl Trzaska, Assistant Public Defender, for appellant.

---

VUKOVICH, Judge.

{¶ 1} Defendant-appellant Rodney Eckles appeals from his conviction in the Belmont County Common Pleas Court for driving under the influence ("OVI"), a violation of R.C. 4511.19(A)(1)(h). The dispositive issue raised in this appeal is whether Eckles's plea was entered into knowingly, intelligently, and voluntarily. For the reasons stated below, we hold that it was not. Thus, the judgment of the trial court is reversed, the plea is vacated, and the case is remanded to the trial court for further proceedings.

## STATEMENT OF CASE

{¶ 2} On February 24, 2006, a bill of information was issued against Eckles. It alleged that on December 27, 2005, Eckles violated R.C. 4511.19(A)(1)(h) by driving under the influence of alcohol or drugs. The information contained a specification that Eckles had previously been convicted of five OVI offenses within the last 20 years. Thus, the charge against him was a fourth-degree felony.

{¶ 3} Thereafter, Eckles waived prosecution by indictment and consented to prosecution by information. Eckles entered a guilty plea pursuant to a plea agreement. The plea agreement indicated that the charge contained a 120–day mandatory prison term. It also stated that the maximum prison term was five years. The agreement then stated that the prosecution would "recommend mandatory [time] to run concurrent with probation violation in case no. 00CR128."

{¶ 4} The trial court found him guilty, and sentencing occurred on March 31, 2006. The state did not make any statements at sentencing concerning what the sentence should be. The trial court sentenced him to 26 months. It stated, "One Hundred Twenty (120) days of this Twenty–Six (26) month term is mandatory pursuant to R.C. 2929.13(G)(2). The remaining Twenty–Two (22) months is

served pursuant to R.C. 2929.14(D)(4). This Sentence shall be served concurrent with the definite sentence imposed upon Defendant on March 31, 2006, in Case No. 00CR128, Belmont County Common Pleas Court."

{¶ 5} Eckles filed a delayed appeal from this sentence, which this court accepted. Eckles raises three assignments of error.

## FIRST ASSIGNMENT OF ERROR

{¶ 6} "The trial court denied Rodney Eckles his right to due process under the Fourteenth Amendment to the United States Constitution, and Section 10, Article I of the Ohio Constitution, when it accepted unknowing, unintelligent, and involuntary guilty pleas."

{¶ 7} In resolving whether a criminal defendant knowingly, intelligently, and voluntarily entered a plea, our query is whether the trial court adequately guarded constitutional and nonconstitutional rights promised by Crim.R. 11(C). *State v. Nero* (1990), 56 Ohio St.3d 106, 564 N.E.2d 474. The applicable standard of review depends upon which right or rights are raised in the appeal. Id. at 108, 564 N.E.2d 474. Strict compliance is required if appellant raises a violation of a constitutional right delineated in Crim.R. 11(C)(2)(c). Id. Alternatively, if appellant raises a violation of a nonconstitutional right found in Crim.R. 11(C)(2)(b), substantial compliance is required. Id.

{¶ 8} Eckles begins by arguing that the plea was not knowingly, intelligently, and voluntarily entered because the trial court accepted his plea from his counsel instead of him and did so prior to addressing him personally and determining that he understood the constitutional and nonconstitutional rights he was waiving.

{¶ 9} Crim.R. 11(C)(2) states that in felony cases, the trial court "shall" refuse to accept a guilty plea without "first addressing the defendant personally" and informing him of the constitutional and nonconstitutional rights he will be waiving by entering a guilty plea.

{¶ 10} Here, at the beginning of the plea hearing, the trial court reviewed the bill of information. It then asked Eckles's counsel whether Eckles was prepared to enter a plea. Eckles's counsel, Edward Sustersic, indicated yes, and stated, "He enters a plea of guilty to the Bill of Information."

{¶ 11} As appellate counsel points out, this was prior to the trial court's personally addressing Eckles. The language of Crim.R. 11(C)(2) is clear that prior to *accepting* the plea, the defendant must first personally be addressed. That said, the transcript does not reveal that the trial court accepted the plea at the time Eckles's counsel entered it for him. In fact, the transcript is clear that the plea was not accepted until the end of the hearing, after Eckles had personally indicated a desire to enter the plea, after Eckles was personally

addressed by the court, and after Eckles had signed the plea agreement in open court.

{¶ 12} "THE COURT: Are you prepared to sign the plea agreement voluntarily and intelligently here in open court today?

{¶ 13} "THE DEFENDANT: Yes, Your Honor.

{¶ 14} "* * *

{¶ 15} "THE COURT: Do you have any questions regarding today's proceedings?

{¶ 16} "THE DEFENDANT: No, sir.

{¶ 17} "THE COURT: The Court finds that this day the Defendant in open court was advised of all of his Constitutional rights and made a knowing, intelligent and voluntary waiver of those rights pursuant to Criminal Rule 11. His plea is accepted and ordered filed."

{¶ 18} Thus, Eckles's argument that the plea was not knowingly, intelligently, and voluntarily entered because his counsel entered the plea for him prior to the trial court personally addressing him has no merit.

{¶ 19} Next, Eckles argues that the trial court failed to adequately guard both his constitutional and nonconstitutional rights as enumerated in Crim.R. 11(C). We will start with the constitutional rights.

{¶ 20} The constitutional rights in Crim.R. 11(C) are the right to trial by jury, the right to confront witnesses against him, the privilege against self-incrimination, the right of compulsory process for obtaining witnesses in his favor, and the obligation of the state to prove its case by proof beyond a reasonable doubt. *Nero*, 56 Ohio St.3d at 108, 564 N.E.2d 474, citing *Boykin v. Alabama* (1969), 395 U.S. 238, 243–44, 89 S.Ct. 1709, 23 L.Ed.2d 274, and *State v. Ballard* (1981), 66 Ohio St.2d 473, 477, 20 O.O.3d 397, 423 N.E.2d 115.

{¶ 21} At the plea hearing, regarding the constitutional rights, the following colloquy occurred:

{¶ 22} "THE COURT: Do you understand by pleading guilty, you give up the right to a speedy and public trial before a jury or before this court?

{¶ 23} "THE DEFENDANT: Yes, Your Honor.

{¶ 24} "THE COURT: Do you understand you give up the right to confront the witnesses against you, that is to have Mr. Sustersic [Eckles's counsel] come into open court and cross-examine them in open court?

{¶ 25} "THE DEFENDANT: Yes.

{¶ 26} "THE COURT: Do you understand you give up the right to compulsory service of process to compel witnesses to testify who might otherwise choose to testify on your behalf?

{¶ 27} "THE DEFENDANT: Yes.

{¶ 28} "THE COURT: Do you understand you give up the right to have the State prove your guilt beyond a reasonable doubt; by making this plea today?

{¶ 29} "THE DEFENDANT: Yes.

{¶ 30} "THE COURT: You understand you give up the right to not be compelled to testify against yourself; in effect today, you're telling me that you're guilty?

{¶ 31} "THE DEFENDANT: Yes, Your Honor.

{¶ 32} "* * *

{¶ 33} "THE COURT: You give up the right to the assistance of Mr. Sustersic at all stages of the proceedings, if the matter had otherwise gone to trial. He would have been here in open court to protect your rights. Do you understand that?

{¶ 34} "THE DEFENDANT: Yes."

{¶ 35} The trial court mentioned all of the constitutional requirements in the above colloquy. However, Eckles argues that two of these constitutional warnings were inadequate: the proof-beyond-a-reasonable-doubt notification and the warning against self-incrimination.

{¶ 36} Regarding the proof-beyond-a-reasonable-doubt notification, Eckles argues that the trial court was required to indicate that the state had the burden to prove *each element* of the offense beyond a reasonable doubt.

{¶ 37} Crim.R. 11(C)(2)(c) states that a defendant must be advised that the state is "require[d] * * * to prove the defendant's guilt beyond a reasonable doubt at trial." It does not require that the trial court state that "each element has to be proven beyond a reasonable doubt." As the language stated by the trial court mimicked the language of the rule, we find no error. The trial court adequately advised Eckles about the right to have the state prove his guilt beyond a reasonable doubt.

{¶ 38} Eckles then contends that the trial court did not properly advise him of his right against self-incrimination. He contends that the trial court was required to advise him that his decision not to testify may not be used against him or commented upon.

{¶ 39} Crim.R. 11(C)(2)(c) states that "the defendant cannot be compelled to testify against himself or herself." The rule contains no requirement that one

must be advised that the decision not to testify cannot be used against him or commented on.

{¶ 40} The Eighth Appellate District was faced with an argument similar to the one made here. *State v. Wangul,* 8th Dist. No. 84698, 2005-Ohio-1175, 2005 WL 628237. In *Wangul,* the argument was that the trial court was required to advise the defendant that "he could testify on his own behalf and that his failure to testify could not be used against him." Id. at ¶ 12. The Eighth District indicated that there was no authority requiring the trial court to advise a defendant of those rights.

{¶ 41} We agree with the holding of our sister district. There is no case law indicating that one must be informed that the decision to not testify cannot be used against the defendant. Furthermore, Crim.R. 11 contains no such require-ment. Consequently, as he was advised that he could not be compelled to testify against himself, the trial court complied with the rule.

{¶ 42} Thus, as to the constitutional advisements, we hold that the trial court strictly complied. Eckles's arguments to the contrary are meritless.

{¶ 43} Next, we will address the nonconstitutional-rights notification and whether those rights were adequately guarded by the warning given. The nonconstitutional rights of which a defendant must be informed are the nature of the charges with an understanding of the law in relation to the facts, the maximum penalty, and the fact that, after a defendant has entered a guilty plea or a no-contest plea, the court may proceed to judgment and sentence. Crim.R. 11(C)(2)(a)(b); *State v. Philpott* (Dec. 14, 2000), 8th Dist. No. 74392, 2000 WL 1867395, citing *McCarthy v. United States* (1969), 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418. As aforementioned, for nonconstitutional rights, the trial court needs only to substantially comply with Crim.R. 11(C). *Nero,* 56 Ohio St.3d at 108, 564 N.E.2d 474. Substantial compliance means that under the totality of the circumstances, the defendant subjectively understands the implications of his plea and the rights he is waiving. Id.

{¶ 44} The following is the statement the trial court made to Eckles regarding the nonconstitutional rights.

{¶ 45} "THE COURT: Do you realize the offense to which you're pleading?

{¶ 46} "THE DEFENDANT: Yes.

{¶ 47} "THE COURT: Do you understand that the maximum penalty could be up to 30 months in the penitentiary and a $10,000 fine and revocation of your driving privileges in the State of Ohio?

{¶ 48} "THE DEFENDANT: Yes, Your Honor.

{¶ 49} "THE COURT: Do you understand that by pleading guilty, you admit the facts as they are stated in the Bill of Information to be true: That you did, while under the influence of alcohol, operate a motor vehicle on or about December 27, 2005, and that there are specifications indicating that you've had five prior DUIs in the 20–year period?

{¶ 50} "THE DEFENDANT: Yes.

{¶ 51} "* * *

{¶ 52} "THE COURT: And do you understand that upon acceptance of your plea, the Court could immediately proceed to judgment and sentence in your case?

{¶ 53} "THE DEFENDANT: Yes."

{¶ 54} The trial court then proceeded to inform Eckles about postrelease control.

{¶ 55} Eckles asserts that this statement did not substantially comply with Crim.R. 11 because the maximum penalty was incorrectly stated.

■ {¶ 56} In general, the failure of a trial court to properly inform a defendant of the maximum penalty applicable to his offense is reversible error. *State v. Caplinger* (1995), 105 Ohio App.3d 567, 572, 664 N.E.2d 959, citing *State v. Gibson* (1986), 34 Ohio App.3d 146, 146–148, 517 N.E.2d 990. This is the case regardless of whether the trial court states the maximum penalty as more or as less than what it is by law. *Caplinger*, 105 Ohio App.3d at 572, 664 N.E.2d 959; *State v. Ashley* (Mar. 31, 1993), 9th Dist. No. 2126–M, 1993 WL 89744; *State v. Calvillo* (1991), 76 Ohio App.3d 714, 720–721, 603 N.E.2d 325.

{¶ 57} A review of the OVI statutes is necessary to determine whether the trial court properly instructed on the maximum penalty. As stated previously, Eckles pled to R.C. 4511.19(A)(1)(h) and the specification, R.C. 2941.1413, that within the past 20 years he had been convicted of five DUI offenses (20–year look-back specification). Subsection (A)(1)(h) of R.C. 4511.19 states that no person shall operate a vehicle while that person has a "concentration of seventeen-hundredths of one gram or more by weight of alcohol per two hundred ten liters of the person's breath." Whoever violates that section is guilty of operating a vehicle while under the influence of alcohol and is to be sentenced under R.C. 2929, except as otherwise authorized or required by R.C. 4511.19(G)(1)(a) to (e). R.C. 4511.19(G)(1).

{¶ 58} R.C. 4511.19(G)(1)(d) is the sentencing provision that is applicable to this case:

{¶ 59} "Except as otherwise provided in division (G)(1)(e) of this section, * * * an offender who, within twenty years of the offense, previously has been

convicted of or pleaded guilty to five or more violations of that nature is guilty of a felony of the fourth degree. The court shall sentence the offender to all of the following:

{¶ 60} "* * *

{¶ 61} "(ii) If the sentence is being imposed for a violation of division (A)(1) * * * (h) * * * a mandatory prison term of one, two, three, four, or five years as required by and in accordance with division (G)(2) of section 2929.13 of the Revised Code if the offender also is convicted of or also pleads guilty to a specification of the type described in section 2941.1413 of the Revised Code or, in the discretion of the court, either a mandatory term of local incarceration of one hundred twenty consecutive days in accordance with division (G)(1) of section 2929.13 of the Revised Code or a mandatory prison term of one hundred twenty consecutive days in accordance with division (G)(2) of that section if the offender is not convicted of and does not plead guilty to a specification of that type. If the court imposes a mandatory term of local incarceration, it may impose a jail term in addition to the one hundred twenty-day mandatory term, the cumulative total of the mandatory term and the jail term for the offense shall not exceed one year, and, except as provided in division (A)(1) of section 2929.13 of the Revised Code, no prison term is authorized for the offense. If the court imposes a mandatory prison term, notwithstanding division (A)(4) of section 2929.14 of the Revised Code, it also may sentence the offender to a definite prison term that shall be not less than six months and not more than thirty months and the prison term shall be imposed as described in division (G)(2) of section 2929.13 of the Revised Code. If the court imposes a mandatory prison term or mandatory prison term and additional prison term, in addition to the term or terms so imposed, the court also may sentence the offender to a community control sanction for the offense, but the offender shall serve all of the prison terms so imposed prior to serving the community control sanction."

{¶ 62} The above refers to two statutes that are important in our analysis: R.C. 2929.13(G)(2) and R.C. 2941.1413.

{¶ 63} R.C. 2941.1413 is the 20–year look-back specification. It states that the "[i]mposition of a mandatory additional prison term of one, two, three, four, or five years upon an offender" under R.C. 2929.13(G)(2) is precluded unless the indictment or information charging a felony violation of R.C. 4511.19(A) specifies that "the offender, within twenty years of the offense, previously has been convicted of or pleaded guilty to five or more equivalent offenses." This statute specifies that the specification stated in the information or indictment must be similar to the example provided in the statute.

{¶ 64} R.C. 2929.13(G)(2) then states that if the offender is being sentenced to a fourth-degree felony OVI offense and the offender has not been convicted of

and has not pleaded guilty to an R.C. 2941.1413 specification, then the court may impose a mandatory prison term of 60 or 120 days (depending upon the level of alcohol concentration). However, if the offender has pleaded guilty or if the offender is found guilty of a R.C. 2941.1413 specification, then the court shall impose on the offender a mandatory prison term of one, two, three, four, or five years. The statute then adds that when a mandatory term is given for the conviction or guilty plea to the R.C. 2941.1413 specification, the one-, two-, three-, four-, or five-year mandatory term must be served "consecutively to and prior to the prison term imposed for the underlying offense and consecutively to any other mandatory prison term imposed in relation to the offense." R.C. 2929.13(G)(2).

{¶ 65} Here, Eckles pleaded guilty to the OVI offense and to the 20–year look-back specification, which complied with the R.C. 2941.1413 mandates. The trial court found him guilty of both. Thus, according to the above cited statutes, he is subject to two sentences: one for the specification (committing five or more offenses within 20 years) and one for the underlying OVI offense. See, generally, *State v. Lorenzo*, 11th Dist. No. 2005–L–190, 2006-Ohio-4668, 2006 WL 2589815. For the guilty plea to the 20–year look-back specification, he is subject to a mandatory one-to-five-year sentence. For the underlying OVI, the trial court shall impose a six–to–30–month sentence, which if imposed, must be served consecutively to the mandatory term. Thus, the maximum sentence he could receive is seven and a half years.

{¶ 66} The above provisions in the OVI statute confirm such a conclusion. Looking at R.C. 4511.19(G)(1)(d)(ii), we see that it first provides a mandatory one-to-five-year term when an offender either pleads guilty or is convicted of the specification. Next, it states that if a mandatory prison term is imposed, the court may also impose the *additional* prison term of no fewer than six months but no greater than 30 months. Second, the language of the R.C. 2941.1413 specifically states, "Imposition of a mandatory *additional* prison term of one, two, three, four, or five years." (Emphasis added.) Lastly, R.C. 2929.13(G)(2) states, "The offender shall serve the one-, two-, three-, four- or five-year mandatory prison term consecutively to and prior to the prison term imposed for the *underlying offense* and consecutively to any other mandatory prison term imposed in relation to the offense." (Emphasis added.)

{¶ 67} Here, Eckles was informed at the hearing that the maximum sentence he could receive was 30 months. The trial court did not advise Eckles that he was subject to the additional mandatory one-to-five-year term for the 20–year look-back specification.

{¶ 68} There is no case law directly on point regarding whether Crim.R. 11(C) requires a court to advise a defendant that there is an additional mandatory

prison term for pleading guilty to the 20–year look-back specification. However, we can analogize this situation to a firearm-specification situation. The Eighth District has recently explained:

{¶ 69} "A firearm specification carries a mandatory additional term of imprisonment of one or three years and constitutes a portion of the maximum penalty involved in an offense for which a prison term will be imposed. See *State v. Higgs* (1997), 123 Ohio App.3d 400, 408, 704 N.E.2d 308. Accordingly, a trial court's lack of notification regarding the additional mandatory time for a firearm specification could be a basis to vacate a plea, since the defendant has not been informed of the maximum penalty for which he is pleading guilty. The rationale behind such a mandate is that without an adequate explanation of the additional mandatory prison time from the trial court, a defendant can not fully understand the consequence of his plea as required by Crim.R.11(C)." *State v. Douglas*, 8th Dist. No. 87952, 2007-Ohio-714, 2007 WL 530158, ¶ 10.

{¶ 70} We find the reasoning set forth by our sister district to be sound and persuasive. The ultimate issue in such cases is whether a defendant entered a plea knowingly, intelligently, and voluntarily. If one is ignorant of the maximum penalty applicable to a plea, it is difficult to find compliance with that standard. Accordingly, we hold that before accepting a guilty plea on a 20–year look-back specification, a trial court is required to instruct on the maximum penalty for the specification. As explained above, a guilty plea to or conviction of a R.C. 2941.1413 specification carries a mandatory additional prison term of one to five years that is required to be served consecutively to the term on the underlying OVI offense. R.C. 2941.1413; R.C. 2929.13(G)(2). Here, the trial court informed Eckles only that the maximum penalty was 30 months. Thus, at the time of the entering and acceptance of his plea, Eckles was not aware that the maximum prison term he could receive was seven and a half years. As such, the plea was not voluntarily, intelligently, or knowingly entered into, and the trial court failed to substantially comply with the nonconstitutional requirements in Crim.R. 11(C). Accordingly, the plea must be vacated. This assignment of error has merit.

## SECOND ASSIGNMENT OF ERROR

{¶ 71} "The state breached the plea agreement when it failed to recommend the agreed-upon sentence at the sentencing hearing. That breach violated Mr. Eckles's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution, Section 10, Article I of the Ohio Constitution, and it invalidates his guilty plea."

{¶ 72} Under this assignment of error, Eckles contends that the state breached its plea agreement. As the first assignment of error concluded that the plea must be vacated, this assignment of error is moot and is not addressed.

THIRD ASSIGNMENT OF ERROR

{¶ 73} "Rodney Eckles's trial counsel provided ineffective assistance, in violation of the Sixth Amendment to the United States Constitution, and Section 16, Article I of the Ohio Constitution."

{¶ 74} This assignment of error is also rendered moot by the resolution of the first assignment of error. *State v. Reece*, 10th Dist. Nos. 05AP–527 and 05AP–528, 2006-Ohio-4073, 2006 WL 2258884, ¶ 20. Thus, it is not addressed.

CONCLUSION

{¶ 75} For the reasons stated above, the judgment of the trial court is hereby reversed, the plea is vacated, and the case is remanded for further proceedings according to law and consistent with this court's opinion.

Judgment reversed
and cause remanded.

DONOFRIO and WAITE, JJ., concur.