[Cite as *State v. Ortello*, 2015-Ohio-3503.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 14 MA 69 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| DYMOND D. ORTELLO | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from the Court of
Common Pleas of Mahoning County,
Ohio
Case No. 13 CR 436

JUDGMENT:                                        Reversed and Remanded.
Judgment Vacated.

APPEARANCES:

For Plaintiff-Appellee:                     Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio  44503

For Defendant-Appellant:                Atty. Joshua R. Hiznay
1040 S. Commons Place, Suite 202
Youngstown, OH 44514

JUDGES:

Hon. Cheryl L. Waite
Hon. Mary DeGenaro
Hon. Carol Ann Robb

Dated:  August 21, 2015

WAITE, J.

**{¶1}** Appellant Dymond Ortello appeals his conviction and sentence on the grounds that the trial court became involved in his plea negotiations, promised an eight-to-ten-year sentence, and then breached the agreement by sentencing him to fourteen years in prison for kidnapping, aggravated robbery, burglary and felonious assault. The record reveals that the judge did make commitments that could reasonably have been interpreted as a promise to impose a lower sentence. Further, it is clear from the record that Appellant's acceptance of the plea was contingent on these commitments. There was also some confusion in the matter about the number and status of the firearm specifications, which could have added to Appellant's belief that the total aggregate sentence would be eight to ten years. Based on the confusion caused by the court's discussion of an eight-to-ten-year sentence and the discrepancy between the information that was communicated at the change of plea hearing versus what was contained in the written plea agreement, the matter is hereby remanded to the trial court to allow Appellant to withdraw his plea and for further proceedings.

## Background

**{¶2}** Appellant was indicted on May 16, 2013, on four separate counts: kidnapping, R.C. 2905.01(A)(3)(c), a first degree felony with a firearm specification; aggravated robbery, R.C. 2911.01(A)(1), (C), a first degree felony with a firearm specification; burglary, R.C. 2911.12(A)(2), (D), a second degree felony; and felonious assault, R.C. 2903.11(A)(2), (D), a second degree felony with a firearm specification. All of the firearm specifications arose out of the same set of events that

occurred on April 13, 2013, and it was clear that they should merge at sentencing. Therefore, the maximum possible sentence in this case was 41 years: eleven years for kidnapping, eleven years for aggravated robbery, eight years for burglary and eight years for felonious assault, for a total of 38 years, plus a maximum of three years for the firearm specifications.

{¶3} On October 30, 2013, Appellant signed a written plea agreement. He agreed to plead guilty to all four counts and to two firearm specifications. A plea hearing was held that same day and the court explained to Appellant the rights he was waiving in entering the plea. Considerable discussion took place regarding the specific sentence that would be imposed. During the hearing the trial judge repeatedly implied that he would impose an eight-to-ten-year prison term. Appellant accepted the court's commitment to impose something between eight and ten years in prison, thus, he agreed to change his plea from not guilty to guilty. At the end of the hearing, the court accepted the written plea agreement. The plea agreement was filed on November 1, 2013. The court's judgment entry accepting the guilty plea was filed the same day.

{¶4} Sentencing was held on June 4, 2014. The court imposed a sentence of eleven years in prison on count two, aggravated robbery; merged the kidnapping count into the aggravated robbery count; imposed eight years for burglary and felonious assault, to be served concurrently with each other and with the aggravated robbery count; and imposed one three-year prison term for the firearm specifications, to be served prior to and consecutive to the aggravated robbery sentence. The total

prison term amounted to fourteen years. Appellant protested that this was not the sentence promised at the plea hearing, but the court disregarded his objections. This timely appeal followed.

## ASSIGNMENT OF ERROR

The trial court breached the parties' plea agreement by imposing a prison term greater than ten years.

{¶5} Appellant argues that he bargained for a prison term of between eight and ten years and that he should be entitled to that prison term because the judge agreed to it. Appellant contends that a Crim.R. 11 plea bargain is a contract. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶61. "Principles of contract law are generally applicable to the interpretation and enforcement of plea agreements." *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶50. "[A]mbiguities in a plea agreement are to be construed against the state." *Id.* at ¶52. If the state breaches a plea agreement, the defendant is entitled to either rescission (withdrawal of the plea) or specific performance. *Santobello v. New York*, 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *see, also, State v. Vari*, 7th Dist. No. 07-MA-142, 2010-Ohio-1300, ¶27; *Ritchie v. State*, 12th Dist. No. CA2008-07-073, 2009-Ohio-1841, ¶9; *State v. Netherland*, 4th Dist. No. 08CA3043, 2008-Ohio-7007, ¶37.

{¶6} In this case, there exists both a written plea agreement and an oral plea agreement obtained during the change of plea hearing. The written agreement does indicate that a maximum prison term of 41 years was possible. The prosecutor

agreed to recommend a prison term of 15 years. At the plea hearing, negotiations took place to narrow down the possible maximum sentence. It is clear from the record that Appellant relied on the specific prison term negotiated at the plea hearing as his incentive to accept the plea bargain.

{¶7} Trial court judges generally are not a party to the plea negotiations. Thus, they are not bound by the recommendations and the contract itself. *Vari*, *supra*, at ¶24. The court usually remains "free to impose a sentence greater than that forming the inducement for the defendant to plead guilty so long as the court forewarns the defendant of the applicable penalties, including the possibility of imposing a greater sentence than that recommended by the prosecutor." *Id.*, citing *State v. Martinez*, 7th Dist. No. 03 MA 196, 2004-Ohio-6806, ¶8. Nevertheless, once the trial court enters into the plea agreement by making a promise, the judge becomes a party to the agreement and is bound by the agreement. *State v. Bush*, 7th Dist. No. 13 MA 110, 2014-Ohio-4434, ¶36, citing *Vari*.at ¶24.

{¶8} The Ohio Supreme Court has stated that, "although this court strongly discourages judge participation in plea negotiations, we do not hold that such participation *per se* renders a plea invalid under the Ohio and United States Constitutions." *State v. Byrd*, 63 Ohio St.2d 288, 293, 407 N.E.2d 1384 (1980). In *Byrd*, the Court explained:

> A judge's participation in the actual bargaining process presents a high
> potential for coercion. The defendant often views the judge as the final
> arbiter of his fate or at the very least the person in control of the

important environment of the courtroom. He may be led to believe that this person considers him guilty of the crime without a chance of proving otherwise. He may infer that he will not be given a fair opportunity to present his case. Even if he wishes to go to trial, he may perceive the trial as a hopeless and dangerous exercise in futility.

* * *

"The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not. A defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a significantly longer sentence. One facing a prison term, whether of longer or shorter duration, is easily influenced to accept what appears the more preferable choice. Intentionally or otherwise, and no matter how well motivated the judge may be, the accused is subjected to a subtle but powerful influence." (Internal Citations Omitted.)

*Id.* at 292.

{¶9} In this case, the judge did interject himself into the plea process by making commitments to Appellant about the prison term that he would likely impose. After reviewing Appellant's constitutional rights and after going over the charges, the gun specifications and the maximum possible prison terms, the court reviewed the prosecutor's prison recommendation. The judge stated that the prosecutor would be asking for a total of twelve years in prison on the combined four counts in the indictment, plus three years on a single firearm specification, to be served prior to and consecutive to the other prison term. (Tr., p. 13.) The court noted that Appellant's attorney would be asking for less than fifteen years.

{¶10} The judge then asked Appellant about a case that was pending against him in Columbiana County, and Appellant said he had not yet entered a plea in that case. (Tr., p. 14.)

{¶11} It is at this point that the court entered into the plea negotiations and made certain commitments concerning the maximum sentence that he would impose. At first, the judge spoke in terms of possibilities rather than absolutes:

**THE COURT:** Okay. I indicated to counsel, so it's no surprise to anybody, and I know Attorney Taylor has indicated this to you and I will indicate this to you for the record, that based upon your acceptance of responsibility I would probably impose between eight and ten years depending upon what happens down in Columbiana County.

(Tr., p. 14.)

**{¶12}** This statement indicates that Appellant's sentence would likely be between eight and ten years. It could also be interpreted to mean that if things did not go well in Columbiana County, the sentence could be ten years. If they did go well, the sentence could be eight years. The judge makes no mention that the sentence could be eight to ten years plus an additional three for the firearm specification. At this point, however, it appears that no promise was made.

**{¶13}** The judge then explained to Appellant the judicial release process. At the end of that discussion, the judge stated:

> **THE COURT:** But I will tell you this. Based on your acceptance of responsibility, I'm telling you right now that I would come in somewhere between eight and ten years. Again, that's going to depend on what Columbiana does.

(Tr., pp. 15-16.)

**{¶14}** This statement can reasonably be interpreted as a promise to impose a sentence between eight and ten years. Furthermore, it can reasonably be interpreted to mean that the outcome of the Columbiana case would determine whether Appellant received a ten-year sentence or an eight-year sentence.

**{¶15}** Appellant then asked the judge if a seven-year prison term were possible, depending on the outcome of the Columbiana case, and the judge stated: "I suppose anything is possible, to answer your question." (Tr., p. 16.) This was not a general statement regarding sentencing. Instead, it was given in answer to Appellant's question whether a seven-year prison term could be imposed.

{¶16} The judge then clarified once again that although seven years was possible, Appellant could not object if the sentence was between eight and ten years:

THE COURT: But I don't want [you] to come back here at sentencing, read the presentence investigation, impose eight, nine, or ten, and have you say, wait a minute; that's not what I thought.

(Tr., pp. 16-17.)

{¶17} So, in the course of a very few minutes of dialogue, the court stated three times that Appellant's prison sentence would fall between eight and ten years. None of those statements mentioned that the eight-to-ten-year period excluded the sentence for the firearm specification, or that the total sentence might be more than eight to ten years.

{¶18} At a later point the judge did explain that he retained judicial discretion in regard to sentencing:

THE COURT: But I don't want you misunderstanding me. Based upon everything and every pretrial and every discussion I've had with the attorneys --

THE DEFENDANT: Yes, sir.

THE COURT: -- I thought eight to ten years with what might happen in Columbiana County was a fair resolution. But I haven't made up my mind because I haven't seen the presentence investigation. I haven't made up my mind because I haven't heard from the victim who has an

opportunity to address the Court. So I have an open mind. I do. And I will certainly consider anything presented at sentence, and I will certainly consider anything presented by the victim, and I will certainly consider the presentence investigation and all criteria that I have to consider under Ohio law. And I'll certainly listen to you.

(Tr., pp. 17-18.)

{¶19} The judge still did not impress upon Appellant that a sentence of more than eight to ten years was possible. This entire section appears aimed at informing Appellant that more leniency might be granted. The court repeated the phrase "eight to ten years" for the fourth time. The only discretion discussed at this point could reasonably be understood to mean the discretion to impose anything within the eight-to-ten-year period that was consistently discussed.

{¶20} The judge then talked about the prosecutor's reasons for recommending a fifteen-year prison term. At the end of this discussion, the judge stated:

**THE COURT:** Whatever the prosecutor asks for is just a recommendation. They can come in and ask for five and I could still come in at eight or ten.

(Tr., pp. 19-20.)

{¶21} This reference is now the fifth time the eight-to-ten year sentence was mentioned by the judge, and at this point the judge could have been expected to add that he could impose eight or fifteen, or even forty-one years, given the actual

maximum possible sentences in this case. Yet, the court never strayed from the "eight to ten" range he advanced in every reference to Appellant's sentence.

{¶22} Appellant and the prosecutor followed this with another discussion about the prosecutor's fifteen-year recommendation, and the prosecutor stated that the recommendation was lenient considering the maximum possible sentence of 45 years. This remark by the prosecutor was the first mention of a possible lengthy prison term. However, a 45-year sentence is not supported by the record, and the prosecutor's statement appears to have been made in error. (Tr., p. 22.)

{¶23} Finally, after Appellant again accepted responsibility for his crime, the judge asked him if he had any further questions about the possible sentence:

> **THE COURT:** Any other questions about the possible sentence that I can impose or what you're looking at as it relates to the sentence that I told you I would follow as close as I can get?
>
> **THE DEFENDANT:** You say eight to ten?
>
> **THE COURT:** Yes.
>
> **THE DEFENDANT:** And you ask me do I have any questions about that?
>
> **THE COURT:** Yes.
>
> **THE DEFENDANT:** It's all in your hands, Your Honor.

(Tr., pp. 22-23.)

**{¶24}** So, for the sixth time, the only prison term discussed with Appellant was a term of eight to ten years. There were no qualifiers, disclaimers or caveats added to the discussion. Appellant questioned whether his possible sentence would be eight to ten years, and the judge replied "yes." Although we recognize that the trial court did remind Appellant on at least two occasions during the plea colloquy that the court retained judicial discretion in sentencing, the overall impression to be gleaned from this record is that discretion was limited to imposing something between eight and ten years in prison.

**{¶25}** Although the judge did not directly make Appellant an absolute promise that he would receive an eight-to-ten-year sentence, the confusion created by the judge's repeated comments about the sentence that would likely be imposed undermines the knowing, intelligent and voluntary nature of the change of plea process. The Due Process Clause found in both the United States and Ohio Constitutions requires that guilty or no contest pleas be made in a knowing, intelligent, and voluntary manner. *Parke v. Raley*, 506 U.S. 20, 28–30, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992); *State v. Buchanan*, 43 Ohio App.2d 93, 96, 334 N.E.2d 503 (8th Dist.1974). If a defendant's guilty plea is not voluntarily and intelligently made, it has been obtained in violation of due process and is void. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). When determining whether a plea is made knowingly, intelligently and voluntarily, courts must consider all of the relevant circumstances surrounding it. *Brady v. United*

*States*, 397 U.S. 742, 749, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *State v. Johnson*, 7th Dist. No. 07-MA-8, 2008-Ohio-1065, ¶8.

**{¶26}** Ohio Crim.R. 11(C) was adopted in order to more accurately determine the nature of a defendant's plea by ensuring an adequate record for review. *State v. Stone*, 43 Ohio St.2d 163, 167-168, 331 N.E.2d 411 (1975); *State v. Stewart*, 51 Ohio St.2d 86, 92-93, 364 N.E.2d 1163 (1977). During the plea colloquy, the trial court is to provide specific information to the defendant, including information about the constitutional and nonconstitutional rights being waived. Crim.R. 11(C)(2); *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶29. Constitutional rights include rights such as trial by jury and the right to confront witnesses. Nonconstitutional rights include information about the nature of the charges and the maximum penalty involved. In order for a plea to be knowing and voluntary, the trial court must follow the mandates of Crim.R. 11(C) and inform the defendant of both the constitutional and nonconstitutional rights being waived.

**{¶27}** Crim.R. 11(C)(2)(a) states that: "In felony cases the court * * * shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following: (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved * * *." A trial court must strictly comply with Crim.R. 11 regarding constitutional rights, and must substantially comply regarding non-constitutional rights. *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance [with Crim.R. 11] means that under the totality of the circumstances the

defendant subjectively understands the implications of his plea and the rights he is waiving." *Id.*; *see also, State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶31. The right to be informed of the maximum sentence is a nonconstitutional right that must be discussed at the plea hearing. *State v. Eckles*, 173 Ohio App.3d 606, 612, 2007-Ohio-6220, 879 N.E.2d 829, ¶43, citing *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). Thus, the trial court must substantially comply with the mandates of Crim.R. 11 with respect to its discussion about maximum possible sentences. Informing the defendant about the maximum possible sentence, though, does not mean having a speculative discussion about the sentence that will likely be imposed. The change of plea hearing is not the appropriate time for the court to discuss his leanings as to a specific sentence, except as it relates to the terms of the plea agreement or if the terms of the sentence are mandatory. *State v. Bragwell,* 7th Dist. No. 06-MA-140, 2008-Ohio-3406, ¶54-58.

{¶28} In this case, the trial judge's repeated comments about the likely sentence, even if those comments cannot be construed as an absolute promise to give a specific sentence, undermined the plea process and the knowing, intelligent and voluntary acceptance of the plea. A reasonable interpretation of this plea colloquy was that the judge intended to impose a sentence of between eight and ten years, regardless of the terms in the written plea agreement. The plea was not formally accepted until the end of the plea hearing, giving the impression that the many references to an eight-to-ten year sentence was the primary basis on which

Appellant agreed to the plea. While the judge's discussion relative to an eight-to-ten year prison term do not rise to the level of an enforceable promise, the numerous references to this likely sentence raise grave questions about the effect of those discussions on the plea process.

**{¶29}** The additional confusion about the gun specifications reinforces the determination that the plea was not knowingly, intelligently and voluntarily made. The plea agreement form explains that the firearm specification is mandatory, but page one of the form lists two firearm specifications, whereas page three contains only one, thus creating additional confusion about the possible sentence. The court's judgment entry accepting the plea agreement notes that there were two gun specifications. At the plea hearing, Appellant raised a question about the specifications: "Yeah, but I still don't understand the specification, like how I got two." (Tr., p. 6.) At a point late in the plea hearing, the prosecutor told Appellant that the maximum sentence was 45 years. (Tr., p. 22.) The actual maximum was 41 years, causing even more confusion as to whether a penalty for more than one firearm specification might be imposed. The question about the gun specifications and how they affected the sentence appear to be at the heart of Appellant's arguments concerning his fourteen-year prison term, particularly when the court repeatedly stated that the sentence would be between eight and ten years and the implication was that the gun specification would be included in that range.

**{¶30}** Given the many references that the judge made that he would likely impose an eight-to-ten-year prison term, along with other ambiguities at the plea

hearing as to firearm specifications, the length of the maximum possible sentence, and what the stated eight-to-ten-year period might include, Appellant's assignment of error is sustained. We hereby vacate the conviction and sentence and remand the case to the trial court so that Appellant may be allowed to withdraw his plea and for further proceedings pursuant to law.

DeGenaro, J., concurs.

Robb, J., concurs.