[Cite as *State v.Kocak*, 2016-Ohio-8483.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 16 MA 0020 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| ANDREW J. KOCAK, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from the Court of Common Pleas of Mahoning County, Ohio
Case No. 15 CR 761

JUDGMENT:      Affirmed.

APPEARANCES:

For Plaintiff-Appellee:      Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman St., 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant:      Atty. Anthony Farris
Deputy Law Director
860 Boardman-Canfield Road
Suite 204
Youngstown, Ohio 44512

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: December 28, 2016

ROBB, J.

{¶1} Defendant-Appellant Andrew Kocak appeals two decisions from the Mahoning County Common Pleas Court. The first is the trial court's judgment finding him guilty of theft, menacing by stalking, and five counts of retaliation. The second decision is the trial court's denial of Appellant's motion to withdraw his guilty plea. Three issues are raised in this appeal. The first issue is whether the trial court participated in the plea negotiations. The second issue is whether the state breached the plea agreement. The third issue is whether the trial court should have vacated the plea based on ineffective assistance of trial counsel.

{¶2} For the reasons discussed below, all assignments of error are meritless. Both the conviction and the trial court's decision to deny the motion to withdraw the guilty plea are hereby affirmed.

Statement of the Case

{¶3} On September 3, 2015, Appellant was indicted for theft of a motor vehicle in violation of R.C. 2913.02(A)(2)(B)(1)(5), a fourth-degree felony; five counts of retaliation in violation of R.C. 2921.05(A)(C), third-degree felonies; and two counts of menacing by stalking in violation of R.C. 2903.211(A)(1)(B)(2)(c) and R.C. 2903.211(A)(1)(B)(2)(e), both fourth-degree felonies. The first six alleged crimes occurred on July 29, 2015. The alleged victim of theft of a motor vehicle was Appellant's mother Deborah Devor; she was also an alleged victim of one count of the retaliation. The alleged victims of the other four counts of retaliation were Rebecca Speicher (Appellant's on-again off-again girlfriend), Daniella Fox (Appellant's ex-girlfriend), Andrea Pryjnja (Appellant's sister), and Andrew Kocak, Sr. (Appellant's father). Rebecca Speicher was the alleged victim of both menacing by stalking charges that occurred between June 1, 2015 and July 29, 2015.

{¶4} Appellant originally entered a not guilty plea; however, following plea negotiations he changed his plea to guilty for the first seven counts of the indictment. The state agreed to dismiss the eighth count of the indictment, menacing by stalking. As a part of the deal, the state recommended an aggregate 36-month sentence for the crimes and agreed to stand silent on whether the sentence should run concurrent

or consecutive to the sentence entered in case number 14CR915. Following a colloquy, the trial court accepted the plea. 2/4/16 Plea Hearing.

{¶5} In late July 2015, under case number 14CR915, Appellant was released on judicial release. While out on judicial release, Appellant allegedly committed the above indicated crimes. As a result of violating the terms of judicial release, the trial court in case number 14CR915 revoked judicial release and re-imposed the original sentence.

{¶6} Sentencing for the theft, retaliation, and menacing by stalking convictions occurred on February 8, 2016. The state followed the plea agreement and recommended an aggregate 36-month sentence. It also indicated it was standing silent on the issue of whether the sentence should run concurrent or consecutive to the sentence imposed in case number 14CR915. However, because Appellant waived his right to a pre-sentence investigation, the state informed the trial court of Appellant's lengthy criminal record.

{¶7} Victims to the offenses spoke at sentencing. Fox, a retaliation victim, asked the court to sentence Appellant to the maximum. Devor, a retaliation victim and the victim of the motor vehicle theft offense, and Speicher, a victim of retaliation and menacing by stalking, asked the court for leniency. Devor and Speicher specifically asked the court to run the sentence concurrent to case number 14CR915. Sentencing Tr. 8-10.

{¶8} Appellant spoke at sentencing; he apologized and asked the court to run the sentence concurrent to case number 14CR915. Sentencing Tr. 15-16. His reason for asking the sentence to be concurrent was because he was accepted to a prison program that has a three year cap, which meant if the offender received a sentence over three years then the offender would not be eligible for the program. Sentencing Tr. 15.

{¶9} Upon consideration of the appropriate factors, the trial court issued a 36-month aggregate sentence and ordered the sentence to be served consecutive to the sentence imposed in case number 14CR915. Sentencing Tr. 24. Appellant interrupted the sentencing, stated he thought the court agreed that the sentence would run concurrent to case number 14CR915, and asked to withdraw his guilty

plea. Sentencing Tr. 24-25, 33. The trial court heard his argument, but explained it never agreed the sentence would run concurrent. Sentencing Tr. 37. The court reminded Appellant he was advised at the plea hearing that the trial court was free to enter the maximum sentence and it was not obligated to follow any recommendation. Sentencing Tr. 37. The trial court then denied the motion to withdraw the guilty plea. Tr. 37; 2/16/16 J.E.

{¶10} Appellant timely appealed his conviction and the denial of the motion to vacate the guilty plea.

### First Assignment of Error

"Appellant's guilty plea was not entered knowingly, intelligently, and voluntarily as a result of the judge's participation in the plea negotiations."

{¶11} Appellant argues the trial court participated in the plea negotiations and he was left with the impression the trial court agreed to order the sentence concurrent to the sentence imposed in case number 14CR915. The trial court, however, ordered the sentence to be served consecutively to the sentence imposed in case number 14CR915. According to Appellant, this makes his guilty plea not knowingly, intelligently, or voluntarily entered.

{¶12} Under Crim.R. 11(C) a trial court must make certain advisements prior to accepting a defendant's guilty plea to ensure the plea is entered into knowingly, intelligently and voluntarily. These advisements are typically divided into constitutional rights and nonconstitutional rights.

{¶13} The constitutional rights are: 1) a jury trial; 2) confrontation of witnesses against him; 3) the compulsory process for obtaining witnesses in his favor; 4) the state must prove the defendant's guilt beyond a reasonable doubt at trial; and 5) the defendant cannot be compelled to testify against himself. Crim.R. 11(C)(2)(c); *State v. Veney,* 120 Ohio St.3d 176, 2008–Ohio–5200, 897 N.E.2d 621, ¶ 19–21. The trial court must strictly comply with these requirements; if it fails to strictly comply, then the defendant's plea is invalid. *Veney* at ¶ 31; *State v. Ballard,* 66 Ohio St.2d 473, 477, 423 N.E.2d 115 (1981).

{¶14} The nonconstitutional rights are: 1) the nature of the charges; 2) the maximum penalty involved, which includes, if applicable, an advisement on

postrelease control; 3) if applicable, that the defendant is not eligible for probation or the imposition of community control sanctions; and 4) after entering a guilty plea or a no contest plea, the court may proceed directly to judgment and sentencing. Crim.R. 11(C)(2)(a)(b); *Veney* at ¶ 10–13; *State v. Sarkozy,* 117 Ohio St.3d 86, 2008–Ohio–509, 423 N.E.2d 1224, ¶ 19–26, (postrelease control is a nonconstitutional advisement). For the nonconstitutional rights, the trial court must substantially comply with Crim.R. 11 mandates. *State v. Nero,* 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Veney* at ¶ 15, quoting *Nero* at 108. Furthermore, a defendant who challenges his guilty plea on the basis the advisement for the nonconstitutional rights did not substantially comply with Crim.R. 11(C)(2)(a)(b) must also show a prejudicial effect, meaning the plea would not have been otherwise entered. *Veney* at ¶ 15, citing *Nero* at 108.

{¶15} The trial court's advisement on the constitutional rights strictly complied with Crim.R. 11(C)(2)(c). Appellant was informed and indicated he understood that by pleading guilty he was waiving his right to a jury trial, his right to confront witnesses against him, his right to subpoena witnesses in his favor, and his right to have the state prove beyond a reasonable doubt every element of the indicted offenses. Plea Tr. 4-5. He was also informed and stated he understood that if he went to trial then he could not be compelled to testify against himself. Plea Tr. 5.

{¶16} The trial court's nonconstitutional rights advisement also complied with the mandates of Crim.R. 11(C). Appellant was advised of the charged offenses, the maximum penalty for each offense, including fines, and that the court could proceed immediately to sentencing. Plea Tr. 4, 6-7, 10-12. He was advised of postrelease control and his eligibility for community control. Plea Tr. 7-8, 9.

{¶17} Therefore, the trial court complied with Crim.R. 11(C) and, on that basis, the plea was knowingly, intelligently and voluntarily entered.

{¶18} However, we have acknowledged that even with Crim.R. 11(C) compliance, the plea bargaining process and the knowing, voluntary and intelligent nature of the plea may still be undermined. *State v. Ortello*, 7th Dist. No. 14 MA 69,

2015-Ohio-3503, ¶ 28. The undermining of the process may result in a plea that is not entered into knowingly, voluntarily, and intelligently. *Id.* In *Ortello*, the trial court made numerous statements indicating it would impose a sentence of eight to ten years. *Id.* at ¶ 28-30. Although the trial court's statements did not amount to an absolute promise to give an eight to ten year sentence, a reasonable interpretation was the court would impose an eight to ten year sentence. *Id.* at ¶ 28. When the trial court did not abide by that statement, we found the plea was not entered into knowingly, intelligently, and voluntarily; accordingly, we vacated the plea. *Id.* at ¶30.

{¶19} In *Ortello,* we explained "[p]rinciples of contract law are generally applicable to the interpretation and enforcement of plea agreements." *Id.* at ¶ 5, quoting *State v. Bethel,* 110 Ohio St.3d 416, 2006–Ohio–4853, 854 N.E.2d 150, ¶ 50. We also explained trial courts generally are not a party to the plea negotiations and the contract itself; "the court is free to impose a sentence greater than that forming the inducement for the defendant to plead guilty so long as the court forewarns the defendant of the applicable penalties, including the possibility of imposing a greater sentence than that recommended by the prosecutor." *Ortello* at ¶ 7, citing *State v. Vari,* 7th Dist. No. 07–MA–142, 2010–Ohio–1300, ¶ 24. However, that general rule no longer applies when the trial court actively participates in the plea agreement by making a promise. *Ortello*, citing *State v. Bush,* 7th Dist. No. 13 MA 110, 2014–Ohio–4434, ¶ 36*.* When the court makes a promise it becomes a party to the agreement and is bound by the agreement. *Ortello* citing *Bush*.

{¶20} In this instance, the record does not reflect active involvement in the plea process by the trial court or any promises by the trial court of running the sentence concurrent to case number 14CR915. At the plea hearing, Appellant indicated he was not promised anything in exchange for his plea and the trial court advised him it was in its discretion to sentence him within the applicable range. Plea Tr. 9-10.

{¶21} Likewise, statements at the sentencing hearing made by Appellant, his counsel, and witnesses do not evince a promise by the trial court to order the sentence concurrent to the sentence imposed in case number 14CR915. Both Devor and Speicher asked the court to run the sentence concurrent to case number

14CR915. Sentencing Tr. 8-10. Counsel argued for a concurrent sentence by explaining the circumstances and Appellant's growth over the past six years. Sentencing Tr. 10-15. Appellant also argued for a concurrent sentence and explained why he wanted that sentence. Sentencing Tr. 15-17. If a promise had been made, counsel, appellant, and the two witnesses would not have had to ask for the sentences to run concurrent.

{¶22} In addition to the arguments made by counsel and Appellant, the record indicates the trial court was receptive to considering concurrent sentences, but it did not promise Appellant he would receive a concurrent sentence:

> THE COURT: I'm going to advise you to stop talking right now. When you put the plea in, as I do with every defendant on every plea, I tell them and I told you the recommendation that's being made is just a recommendation. I do not have to follow it and can sentence you up to the maximum amount of time.
>
> THE DEFENDANT: I was told you were **receptive** to it.
>
> THE COURT: The recommendation that you signed off on on [sic] the plea does not address the issue of consecutive or concurrent, nor did the prosecutor make a recommendation there. I'm going to finish the sentencing, and then we'll address the issue that you've just raised.
>
> * * *
>
> MR. CARTWRIGHT-JONES [counsel for Appellant]: A couple of things. First, I would ask the Court to appoint counsel to file a notice of appeal and prosecute an appeal for Mr. Kocak.
>
> Second, as we got in the sentencing colloquy, Mr. Kocak I think based on my representations – my representation was I had spoken to the Court, and the Court indicated being **receptive** to arguments as far as sentencing, which is of course what we were here for today – wishes to withdraw his guilty plea. I think that based on what Mr. Kocak just said, he feels that he entered the plea on the basis of an inducement that he

would indeed be receiving concurrent sentences, that based on that mistaken belief, it is a less than voluntary, knowing, and intelligent guilty plea.

* * *

THE COURT: Here's what I need to tell you about that. I don't ever, ever agree to a sentence at a plea. I don't do it. And the reason that I don't do it is because of sentencing hearings. There's a reason why we have hearings for sentences, so that I can hear the evidence that I'm not aware of at the time that the plea deal is made. So I don't ever say to the lawyers this is what I will do at sentencing. I just don't do it.

THE DEFENDANT: I –

THE COURT: That's why I didn't do it at this time.

THE DEFENDANT: I understand –

THE COURT: Don't interrupt me. That's why every time I take a plea I make it a point to say to the defendant do you understand I could sentence you up to the maximum amount on each of these counts. That statement was made to you while you knew that the case with Judge D'Apolito was pending. Yes, what else would you like to say?

THE DEFENDANT: That statement was made to me from you like three minutes after I was kind of comforted that you were really **receptive** to concurrent time; we don't see a problem with this. That's why I wanted the sentence quick. I didn't think your mind would get changed in a weekend. I mean, I would have never signed this. I'm guilty of things, but not what I signed off on. Like I'm guilty of misdemeanors, like a whole bunch of them. Like I'm not denying that at all. The --

Emphasis added. Sentencing Tr. 25, 32-33, 34-36.

**{¶23}** The key word in the above colloquy is "receptive." Receptive means "open and responsive to ideas, impressions, or suggestions." http://www.merriam-webster.com/dictionary/receptive. Counsel's and Appellant's continual use of the word "receptive" means the trial court was willing to consider concurrent sentences, not that it was going to impose concurrent sentences.

**{¶24}** Furthermore, despite Appellant's insistence, this case is not akin to *Ortello*. In *Ortello* the trial court created confusion by repeated comments of what sentence it would likely impose. *Ortello*, 2015-Ohio-3503 at ¶ 25. In this instance, we do not have any evidence of repeated comments regarding a possible concurrent sentence. In fact, the plea agreement is devoid of any discussion of whether the sentence would run concurrent or consecutive to case number 14CR915; the state indicated it would stand silent on the issue at sentencing and no further mention of the issue was made. In *Ortello*, there were also other issues which called into doubt the voluntary, intelligent, and knowing nature of the plea. *Id.* at ¶ 30 (There were ambiguities at the plea hearing as to firearm specifications, the length of the maximum possible sentence, and what the stated eight-to-ten-year period might include.). Those issues are not present in this case.

**{¶25}** Consequently, for those reasons, this court concludes the trial court was not actively involved in the plea negotiations, and the plea was entered into voluntarily, intelligently, and knowingly. This assignment of error is deemed meritless.

Second Assignment of Error

"The hearing court abused its discretion in denying Appellant's request to withdraw his plea after the plea agreement was violated."

**{¶26}** Under this assignment of error, Appellant argues the trial court should have permitted him to withdraw his guilty plea because the state breached the plea agreement when it discussed his criminal record and the facts of the case.

**{¶27}** The plea agreement was mentioned both at the plea hearing and at the sentencing hearing. The state indicated the agreement was for the state to recommend a 36-month sentence and to stand silent on the issue of whether the sentence should run concurrent or consecutive to the sentence imposed in case

number 14CR915. Plea Tr. 2; Sentencing Tr. 3-4. The state recommended a 36-month sentence, and it did not explicitly present an argument for a consecutive sentence. Tr. 3-4. However, the state did give the trial court a recitation of Appellant's criminal record and the facts of the case. Tr. 4-5. It did so because there was no pre-sentence investigation; Appellant waived it, and the sentencing occurred four days after the guilty plea was entered.

**{¶28}** A plea agreement is an essential part of the criminal justice system. *Vari,* 7th Dist. No. 07MA142, 2010-Ohio-1300, ¶ 19, citing *Santobello v. New York,* 404 U.S. 257, 261, 92 S.Ct. 495 (1971). "Principles of contract law are generally applicable to the interpretation and enforcement of plea agreements." *Bethel,* 2006–Ohio–4853 at ¶ 50. A defendant has a contractual right to enforcement of the prosecutor's obligations under the plea agreement after the plea has been accepted by the court. *Vari* at ¶ 25. If the state breaches a plea agreement, the defendant is entitled to either rescission (withdrawal of the plea) or specific performance. *Santobello,* 404 U.S. at 263; *see, also, Vari,* 2010–Ohio–1300 at ¶ 27*.*

**{¶29}** We are asked to determine whether the statements made by the state at sentencing violated the terms of the plea agreement. Appellant argues it did because the recitation of his record was an implicit way to not stand silent on the issue of whether the sentence should run concurrent or consecutive to the sentence imposed in case number 14CR915. The state disagrees.

**{¶30}** The following are the statements made by the state at sentencing:

MS. McLAUGHLIN [prosecutor for the state]: Good afternoon, Your Honor. * * *

This defendant waived his presentence investigation. And because the Court does not have that information in front of it, I would just like to give you a little bit of information about the defendant's criminal history and what actually happened here. This defendant was granted judicial release. He was serving a prison term for Judge D'Apolito. And on July 29th of 2015 the Court did hold a hearing and granted him judicial release. It was almost immediately upon his release that he then engaged in the criminal activity we're here about today. Judge

D'Apolito has since found him to be in violation, revoked that judicial release, and sentenced him to serve the balance of his term in the institution in Case No. 14 CR915C.

* * *

Today the parties are jointly recommending to you a term of 36 months in the penitentiary on this case. However, the state is making no argument as to whether that should be concurrent to Judge D'Apolito's sentence or consecutive to that sentence from Judge D'Apolito.

In looking back through his criminal history, this defendant has an extremely lengthy history. Starting in 2001, he has a disorderly conduct. He has forgery, a felony of the fifth degree, in 2006. He has domestic violence, a misdemeanor of the first degree, in 2005. He has two counts of forgery, felonies of the fifth degree. Looks like those are in 2006. He has a theft, a misdemeanor of the first degree, in 2007. Receiving stolen property in 2007. Receiving stolen property in 2008. Theft, a felony, in 2010. Receiving stolen property, breaking and entering, and another count of receiving stolen property in Summit County in 2011. And then the conviction I just spoke of, endangering children, corrupting another with drugs, felonious assault, and intimidation. Those were in 2014, and that's the Judge D'Apolito case. In addition, he has a burglary conviction in 2014, another count of receiving stolen property, and a retaliation offense. So this is now the second time that we have him here pleading guilty to retaliation-type offenses.

In this case the victims came to court to address the issue of the defendant's judicial release. They were present in the courtroom. I was present at that hearing as well. Judge D'Apolito did not permit them to address the Court because they weren't actually victims or parties in that litigation. However, these charges came after the

defendant was released and he told his mother he was going to kill those individuals who had come in to speak against his judicial release.

In addition, the defendant did take his mother's vehicle, televisions, and cash. Her name is Deborah Devor. She has requested restitution in the amount of $150, and I believe that actually a judgment entry was prepared, your bailiff informed me, the last time the parties were here at the time of the plea to order that restitution.

Sentencing Tr. 2-6.

**{¶31}** Appellant did not object during these statements and did not later lodge an objection claiming the state breached its plea agreement when it made the above statements. Failure to object waives all but plain error. *State v. Adams*, 2014-Ohio-724, 8 N.E.3d 984, ¶ 23-24 (7th Dist.) (Counsel failed to object to alleged breach of plea. Case reviewed under plain error standard.); *State v. Hartley*, 3d Dist. No. 5–14–04, 2014–Ohio–4536, ¶ 9 (Failure to object to the alleged breach of the plea agreement in the trial court resulted in forfeiture of "all but plain error on appeal."); *State v. Dudas*, 11th Dist. Nos. 2006–L–267, 2006–L–268, 2007–Ohio–6739, ¶ 93 (same).

**{¶32}** Pursuant to Crim.R. 52(B), "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error is a discretionary doctrine to be used with the utmost of care by the appellate court only in exceptional circumstances in order to avoid a manifest miscarriage of justice. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 62.

**{¶33}** In this instance, this court concludes there was no error, plain or otherwise. The state did not breach the plea agreement; it stood silent on the concurrent versus consecutive sentence issue. Admittedly, the state did reference Appellant's criminal record and the facts of the case. However, the state was merely stating facts; it was not presenting an argument on whether the sentence should be concurrent or consecutive to the sentence imposed in case number 14CR915. In this case, those facts were necessary for the trial court to hear; there was no presentence investigation. Thus, the trial court had no information regarding Appellant's prior

record. An offender's prior criminal record is an important consideration for trial courts when it is formulating a sentence that is guided by the purposes and principles of sentencing enumerating in R.C. 2929.11 and R.C. 2929.12. Furthermore, the state only recited the criminal record; it did not connect that recitation to any argument.

{¶34} Consequently, this court concludes there was no breach of the plea agreement. This assignment of error is meritless.

### Third Assignment of Error

"Appellant received ineffective assistance of counsel in that defense counsel admittedly induced a mistaken belief in Appellant that he would be receiving concurrent sentences."

{¶35} At the sentencing hearing, after hearing the trial court imposed a consecutive sentence, Appellant orally moved to vacate his plea. He argued it was represented to him that his sentence would run concurrent to the sentence imposed in case number 14CR915. On appeal, he argues trial counsel was ineffective because counsel told him he would receive a concurrent sentence. Appellant's belief he would receive a concurrent sentence was the reason he entered into the plea agreement. He argued then and argues now that had he known it would be a consecutive sentence he would never have entered into the plea agreement. Sentencing Tr. 24, 33-34.

{¶36} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1. The post-sentence motion to withdraw a guilty plea is reserved for extraordinary circumstances. *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977). The defendant has the burden of establishing the existence of manifest injustice. *State v. Caraballo*, 17 Ohio St.3d 66, 67, 47 N.E.2d 627 (1985); *Smith*, 49 Ohio St.2d at 264, 361 N.E.2d 1324.

{¶37} Manifest injustice to support withdrawal of a guilty plea can take the form of ineffective assistance of counsel. *State v. Dalton*, 153 Ohio App.3d 286, 2003–Ohio–3813, 793 N.E.2d 509 ¶ 18 (10th Dist.). *See also State v. Howard*, 7th

Dist. No. 12MA41, 2012–Ohio–1437. In seeking to invalidate a guilty plea based on ineffective assistance of counsel, a defendant must demonstrate counsel's performance was deficient and he was prejudiced by the deficiency, i.e. a reasonable probability he would not have agreed to plead guilty but for counsel's deficiency. *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992) (a presentence motion case), applying *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984) (setting forth the basic two-part test for evaluating counsel's performance) and *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366 (1985) (applying *Strickland* to an attorney's representation at the plea stage). A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

{¶38} Appellant's arguments are meritless. The assertions made at the sentencing hearing were the trial court was "receptive" to running the sentence concurrent to the sentence imposed in case number 14CR915. Both defense counsel and Appellant used that word. Sentencing Tr. 25, 32, 35. As stated under the first assignment of error, the word "receptive" means the trial court would consider the issue. It does not mean the trial court had already decided it would give a concurrent sentence. Appellant admitted counsel told him the trial court was "receptive" to concurrent sentences. Sentencing Tr. 25, 32, 35. Nothing in the record indicates counsel told Appellant he would receive a concurrent sentence.

{¶39} Furthermore, the trial court's statements during sentencing clearly indicate it was **receptive** to concurrent sentences:

THE COURT: I'm not a party to your conversations with your counsel. I don't know what went on, what was said, what wasn't said. I know that we always have conversations about what's likely and what I might be receptive to. And I always leave the door open for this very reason. I hear things at sentencing hearing that either I didn't hear earlier or that I wasn't aware of. Today I heard some very serious allegations with regard to your past behavior. That influenced my decision, as I said earlier, as to whether these should run consecutive or concurrent. That's the reason that we have sentencing hearings. That's the reason

why I have discretion to do what I do. That's the reason that I always tell people are you aware that this could happen.

Sentencing Tr. 36-37.

**{¶40}** Given the record, counsel conveyed the information accurately; the court was **receptive** to running the sentence concurrent to case number 14CR915. It was for Appellant to decide whether to take the plea. Being **receptive** to possibly imposing the sentence concurrent to the sentence in case number 14CR915 was not a guarantee of imposing a concurrent sentence. Consequently, there is no evidence counsel's performance was deficient. This assignment of error is without merit.

<u>Conclusion</u>

**{¶41}** All assignments of error are meritless. The conviction and the trial court's decision to deny the motion to withdraw the guilty plea are affirmed.

Donofrio, P.J., concurs.

Waite, J., concurs.