[Cite as *State. Lehmkuhle*, 2019-Ohio-1044.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## VAN WERT COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO. 15-18-10

    v.

ERIK R. LEHMKUHLE,                    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Van Wert County Common Pleas Court
Trial Court No. CR-11-11-146

**Judgment Affirmed**

Date of Decision: March 25, 2019

APPEARANCES:

    *Reed D. Searcy* for Appellant

    *Peter R. Seibel* for Appellee

**SHAW, J.**

**{¶1}** Defendant-Appellant, Erik R. Lehmkuhle ("Lehmkuhle"), appeals the August 16, 2018 judgment of the Van Wert County Court of Common Pleas overruling his post-sentence motion to withdraw his guilty plea.

*Procedural History*

**{¶2}** On November 4, 2011, the Van Wert County Grand Jury returned a thirteen-count indictment against Lehmkuhle alleging seven counts of first degree felony Rape, one count of second degree felony Attempted Rape, and five counts of third degree felony Gross Sexual Imposition. The charges stemmed from allegations that Lehmkuhle sexually abused his then twelve-year-old daughter, S.Z. Lehmkuhle faced multiple terms of life imprisonment, among other sanctions.

**{¶3}** On July 6, 2012, at the State's request, a *nolle prosequi* was entered as to seven of the counts, which included three counts of Rape and four counts of Gross Sexual Imposition.

**{¶4}** On October 31, 2012, Lehmkuhle entered an *Alford* plea to one count of third degree felony Gross Sexual Imposition.[1] The five remaining counts, which included charges of Rape and Attempted Rape, were dismissed.

---

[1] An "*Alford* plea" is a specialized type of guilty plea when the defendant, although pleading guilty, continues to deny his or her guilt but enters the guilty plea because the defendant believes that the offered sentence is better than what the outcome of a trial is likely to be. *State v. Carey*, 3d Dist. Union No. 14-10-25, 2011-Ohio-1998, ¶ 6, citing *State v. Piacella*, 27 Ohio St.2d 92 (1971). Although an *Alford* plea allows a defendant to maintain his factual innocence, the plea has the same legal effect as a guilty plea. *State v. Vogelsong*, 3d Dist. Hancock No. 5-06-60, 2007-Ohio-4935, ¶ 15.

{¶5} On December 12, 2012, the trial court held a sentencing hearing and imposed a prison term of forty-eight months upon Lehmkuhle, a mandatory period of five years of post-release control, and registration as a Tier II sex offender. Lehmkuhle was also given 458 days of jail time credit.

{¶6} The record indicates that Lehmkuhle was released from prison in September of 2015, after serving his prison term, and was placed on post-release control.

{¶7} On February 15, 2018, Lehmkuhle filed a post-sentence motion to withdraw his guilty plea. In this motion, Lehmkuhle argued that his trial counsel "misadvised" him of the potential effects of his *Alford* plea and guaranteed him that he would get community control if he entered the plea. Lehmkuhle also argued that the victim of the case, his now adult daughter, had recently come forward and admitted that she fabricated the accusations of sexual abuse, which formed the factual basis for his conviction for Gross Sexual Imposition. Lehmkuhle attached his own affidavit and affidavits from his father and the victim to his motion to withdraw his guilty plea. In her affidavit, the victim, S.Z., claimed that she not only fabricated the allegations of sexual abuse, but that when she attempted to change her story during the pre-trial proceedings the investigating detective informed her that she "would be in even more trouble than [Lehmkuhle]." (Doc. No. 171, Ex. D). S.Z. averred that "[a]s a result I kept the fact that I lied about this whole thing to myself." (Id.).

{¶8} On April 9, 2018 and June 19, 2018, the trial court conducted hearings on Lehmkuhle's motion to withdraw his guilty plea. Lehmkuhle testified on his own behalf and presented testimony from his father and S.Z. The State presented the testimony of the prosecuting attorney who handled Lehmkuhle's plea and the detective who investigated the case in 2011 and 2012.

{¶9} On August 16, 2018, the trial court issued a judgment entry overruling Lehmkuhle's motion. Specifically, the trial court stated the following in its judgment entry:

> **[T]he Court has considered all the of the evidence and testimony of the defendant, his father and his daughter and likewise has considered the evidence and testimony \* \* \* submitted by the State of Ohio and has weighed the credibility of the witnesses and finds that the Defendant has failed to sustain the burden of establishing 'manifest injustice' as set forth in criminal rule 32.1 of the Ohio Rules of Criminal Procedure for inadequate assistance of counsel or for recanting of complainant's testimony.**

(Doc. No. 203 at 7).

{¶10} Lehmkuhle filed this appeal from the August 16, 2018 Judgment Entry, asserting the following assignments of error.

### ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED AND DENIED DEFENDANT HIS DUE PROCESS RIGHTS UNDER THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO WHEN IT FAILED TO INCLUDE WRITTEN FINDINGS OF FACT AND CONCLUSIONS OF LAW IN ITS DECISION DENYING DEFENDANT'S MOTION TO WITHDRAW.**

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING DEFENDANT'S MOTION TO WITHDRAW.**

{¶11} For ease of discussion, we elect to address the assignments of error out of order.

*Second Assignment of Error*

{¶12} On appeal, Lehmkuhle argues that the trial court abused its discretion when it overruled his motion to withdraw his guilty plea. Specifically, Lehmkuhle maintains that he presented sufficient evidence at the hearing on the motion to demonstrate that he received ineffective assistance of counsel prior to entering the plea and that the allegations of sexual abuse against him were fabricated.

*Standard of Review*

{¶13} Under Crim.R. 32.1, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." This rule establishes a fairly stringent standard for deciding a post-sentence motion to withdraw a guilty plea. *State v. Xie*, 62 Ohio St.3d 521, 526 (1992). The burden of establishing the existence of "manifest injustice" is on the individual seeking to vacate the plea. *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph one of the syllabus. Under the manifest injustice standard, a post-sentence motion to withdraw a plea is allowed only in

"extraordinary cases" and has been defined by the Supreme Court of Ohio as a "clear or openly unjust act." *Id.* at 264; *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208 (1998). 'A "manifest injustice" comprehends a fundamental flaw in the path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her.' " *State v. Brooks*, 2d Dist. Montgomery No. 23385, 2010-Ohio-1682, ¶ 8., quoting *State v. Hartzell*, 2d Dist. Montgomery No. 17499 *2 (Aug. 20, 1999). The purpose of the manifest injustice requirement is to avoid the possibility of a defendant pleading guilty to test the weight of potential punishment. *Smith, supra*, 49 Ohio St.2d at 264.

{¶14} The decision whether to grant or deny a defendant's motion to withdraw a guilty plea is within the trial court's discretion. *State v. Brown*, 10th Dist. Franklin No. 18AP-112, 2018-Ohio-4984, ¶ 6, citing *State v. Xie*, 62 Ohio St.3d 521, 527 (1992). Abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

*Evidence Presented at the 2018 Hearing*

*1. Ineffective Assistance of Counsel*

{¶15} Lehmkuhle presented his own testimony and that of his father, Charles Lehmkuhle, in support of his claim that he should be allowed to withdraw his plea on the basis that his trial counsel provided him with ineffective assistance during

the plea proceedings. Lehmkuhle claimed that his trial counsel was ineffective because he convinced Lehmkuhle to enter a plea by telling Lehmkuhle that he would be placed on community control and that he could easily reopen the case and withdraw his plea if new information came to light. Thus, Lehmkuhle alleges that his trial counsel never adequately explained the likelihood of him being sent to prison and the level of difficulty for reopening his case once he entered his guilty plea. Lehmkuhle also expressed displeasure with his trial counsel's case strategy, which was reiterated by his father, who testified that trial counsel did not contact him regarding Lehmkuhle's whereabouts on certain dates.

{¶16} However, at the hearing on his motion, Lehmkuhle did not call his former trial counsel to testify. Nor has Lehmkuhle made any allegation that the Crim.R. 11(C) plea proceedings conducted by the trial court explaining his rights and ascertaining whether he entered his plea knowingly, voluntarily, and intelligently were deficient or otherwise inadequate.

2. *The Victim's Recantation*

{¶17} The record indicates that the evidence supporting the charges listed in the indictment consisted, in large part, of statements made by then twelve-year-old S.Z. to numerous people regarding allegations of sexual abuse by Lehmkuhle. Specifically, S.Z. initially disclosed the allegations of sexual abuse by her father to school officials and claimed that she was afraid to return home to live with him. The case was referred to Van Wert County Children Services and S.Z. was

temporarily placed in foster care. S.Z. consistently repeated the allegations against her father in detail to several people, including her foster mother, the children's services case worker, the investigating detective, and the medical examiner. The record indicates that the allegations made by S.Z. involved digital-vaginal and penile-vaginal penetration as well as oral sex.

{¶18} S.Z.'s statements regarding the sexual abuse were further substantiated by contemporaneous entries in her diary, which were obtained by law enforcement during its investigation. In addition, the report of the medical examiner concluded that although the results of the physical exam did "not rule out or confirm prior sexual abuse, * * a diagnosis of sexual maltreatment is warranted," based upon S.Z.'s "reported disclosure." (Def. Ex. A). Thus, this was the status of the case at the time Lehmkuhle entered his guilty plea in 2012.

{¶19} In 2018, S.Z. testified at the hearing on Lehmkuhle's motion to withdraw his guilty plea. At the time of the hearing, S.Z. was nineteen years old. S.Z. stated that she had lied about each and every allegation of sexual abuse that she had previously made against her father and that she likewise had lied every time she retold the allegations to another individual. S.Z. explained that at the time she had made the allegations, Lehmkuhle and her step-mother were going through an acrimonious divorce. S.Z.'s step-mother had abruptly moved out of the home with her half-siblings, leaving S.Z. with Lehmkuhle. S.Z. claimed that Lehmkuhle left her alone at the house for long periods of time while he worked, which resulted in

her feeling extremely lonely and receiving a lack of attention from her father. She also claimed that Lehmkuhle often brought women home to engage in sexual conduct with while S.Z. was supposed to be asleep. She also stated that she found Lehmkuhle's pornography and nude pictures of Lehmkuhle and other women while "snooping" through his things.

{¶20} S.Z. explained that she went to live with a family friend for ten days in the summer of 2011 and she no longer felt lonely. She claimed that she did not want to return to living with Lehmkuhle and wanted "to stay with another family for a little while longer," so she fabricated the allegations of sexual abuse so that she could remain out of Lehmkuhle's home. (Apr. 9, 2018 Hrg. at 77). Shortly thereafter, S.Z. was placed with a foster family for approximately eight months. S.Z. claimed that as she heard the hardships of other foster children, she began to regret the allegations she made about her father. She stated that "I realized that my, my story was fake and that they have it much worse than I ever did." (Id. at 80). S.Z. claimed at that point she "wanted to tell the story differently." (Id.).

{¶21} S.Z. alleged that when she attempted to change her story, by saying the allegations against Lehmkuhle were false and had occurred in a dream, her foster parents, the prosecuting attorney, and the investigating detective all told her to "be quiet" and "not to say anything." (Id. at 81). Specifically, S.Z. alleged that during an investigative interview, the lead detective told her that she "would possibly go to jail or face a more heavier sentence than [Lehmkuhle]" if she changed her story.

(June 19, 2018 Hrg. at 6). S.Z. also alleged that the prosecuting attorney visited her foster home for trial preparation and S.Z. asked her "what if it was a dream, like what would happen?" S.Z. claimed that the prosecuting attorney responded by telling her that "if I changed my story now that I would be in a lot of trouble because I would be lying" and "they told me that I'd go to jail." (Id.).

{¶22} S.Z. also claimed that she was confused about the nature of sexual intercourse when confronted on the stand at the 2018 hearing with the journal entries that she wrote in the summer of 2011, in which she stated that Lehmkuhle "had sex" with her. Specifically, she stated that she thought having sex was the same as hugging based upon watching her father's pornography that she found in the home and accidentally walking in on her father having sex. S.Z. maintained that based upon her current understanding of sexual intercourse as an adult, Lehmkuhle never touched her inappropriately in 2011.

{¶23} In opposition to Lehmkuhle's motion, the State presented the testimony of the lead detective from the Van Wert City Police Department who handled the case in 2011 and 2012. The detective recalled that he was the investigating officer of the sexual abuse allegations against Lehmkuhle by S.Z. after the case was referred to law enforcement by children services. The detective interviewed S.Z. and discussed S.Z.'s diary entries with her line by line. He recalled that S.Z. described the sexual conduct that she engaged in with Lehmkuhle in detail.

**{¶24}** The detective also interviewed Lehmkuhle prior to him entering his plea and recalled that Lehmkuhle challenged S.Z.'s credibility with respect to her allegations, specifically that "[Lehmkuhle] painted [S.Z.] as having a lot of problems, past problems, past sexual abuse, you know, he caught her doing a lot of things that were inappropriate for a child of that age." (June 19, 2018 Hrg. at 56). The detective further elaborated that based on Lehmkuhle's statements he believed that S.Z. was fully aware of the nature of sexual intercourse from her father's description of her behavior. The detective explained that Lehmkuhle's statements about S.Z. prompted him to "fully vet [S.Z.]'s statement with a polygraph." (Id. at 58). He testified that S.Z. passed the polygraph and the results of the test "enhanced" her credibility. (Id. at 59). The detective also stated that in addition to S.Z.'s statements and her polygraph results, there was also a medical examination of S.Z. completed indicating that S.Z had been sexually abused.

**{¶25}** The detective stated that S.Z. never suggested to him that the sexual conduct with Lehmkuhle happened in a "dream" or otherwise indicated that she wanted to recant the allegations against Lehmkuhle. To the contrary, the detective recalled S.Z. "felt that [Lehmkuhle] should go to jail for twenty-three (23) years and that she wished to protect her [younger] sister Brielle from this happening to her." (June 19, 2018 Hrg. at 63). He also explained that if S.Z. would have indicated to him that she wanted to recant or change her statement he would have documented that in his report and notified the prosecuting attorney. However, no such notation

was made in his investigative report. Thus, he denied S.Z.'s allegations that he persuaded her not to change her story during his interviews with her.

{¶26} The prosecuting attorney, who handled the pre-trial proceedings and Lehmkuhle's plea in 2012, also testified for the State. The prosecuting attorney categorically denied S.Z.'s allegations that she had threatened S.Z. not to change her story by telling her that she would be subject to a punishment harsher than Lehmkuhle if she recanted the allegations against him. The prosecuting attorney testified that she never met with nor did she have "access to" S.Z. for trial preparation before trial. (June 19, 2018 Hrg. at 75). Notably, the prosecuting attorney's testimony in this regard contradicts S.Z.'s testimony at the 2018 motion hearing that she met with the prosecuting attorney at least three times for trial preparation before the resolution of the case. The prosecuting attorney explained that she was not the initial prosecutor assigned to the case. She was later brought in when a conflict arose. At that time, S.Z. had already moved to Alabama to live with relatives. The prosecuting attorney recalled that she at one point spoke with S.Z.'s relatives to arrange for S.Z. to travel to Ohio for trial, however that did not occur since the case was resolved by Lehmkuhle entering a plea.

{¶27} The prosecuting attorney further explained that she typically does not meet with a child victim in a sexual assault case until she knows the case is going to trial and, in those circumstances, she would ordinarily wait until close to the trial to meet in order to avoid putting the victim through unnecessary trauma. She further

stated that she would have taken notes if she had interviewed S.Z. and found nothing in her case file to indicate that such a meeting took place.

*Discussion*

**{¶28}** In its judgment entry overruling his post-sentence motion to withdraw his plea, the trial court addressed each of the two grounds alleged by Lehmkuhle that a "manifest injustice" had occurred in his case. With respect to his ineffective assistance of counsel claim, the trial court stated:

> **While ineffective assistance of counsel may be a basis for a finding of "manifest injustice," the passage of time, between the Defendant's plea and raising the ineffective assistance of counsel claim, coupled with the Defendant having served his sentence and the availability of other remedies lessen the strength of the inadequate assistance of counsel argument. The Defendant, all during this time, had the opportunity of appeal as well as post-conviction statues [sic] to raise the ineffective assistance of counsel argument. It is noteworthy that neither party saw fit to call [trial counsel] as a witness to substantiate the Defendant's claim or explain the circumstances surrounding the Defendant's plea. The Defendant's Motion to Withdraw his Plea on the ground of ineffective assistance of counsel is overruled.**

(Doc. No. 203 at 5).

**{¶29}** As noted by the trial court, manifest injustice to support withdrawal of a guilty plea can take the form of ineffective assistance of counsel. *State v. Kocak*, 7th Dist. Mahoning No. 16 MA 0020, 2016-Ohio-8483, ¶ 40, citing *State v. Dalton*, 153 Ohio App.3d 286, 2003-Ohio-3813, ¶ 18 (10th Dist.). *But*, *see*, *State v. Joyner*, 4th Dist. Pickaway No. 17CA5, 2017-Ohio-8652, ¶ 12. ("Claims of ineffective assistance of counsel surrounding a plea should generally be raised in a petition for

post-conviction relief.")  When an alleged error underlying a motion to withdraw a guilty plea is the ineffective assistance of counsel, the defendant must show (1) that his counsel's performance was deficient and (2) that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty. *State v. Tapia-Cortes*, 10th Dist. Franklin No. CA2016-02-031, 2016-Ohio-8101, ¶ 13, citing *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984).

{¶30} We agree with the trial court that Lehmkuhle failed to substantiate his ineffective assistance of counsel claim at the hearing on his motion.   Lehmkuhle relies, in part, on conversations that he allegedly had with trial counsel that are outside the record.  For reasons not apparent, Lehmkuhle chose not to call his trial counsel as a witness at the hearing on his motion to withdraw.  Thus, the only evidence submitted in support of Lehmkuhle's contention with respect to the advice given to him by trial counsel regarding the nature of his plea are his own statements presented through his testimony at the hearing.

{¶31} However, the State introduced the written, signed plea agreement with an acknowledgment by Lehmkuhle that "no officer of this Court or any attorney has promised or suggested that I will receive a lighter sentence or community control or any other form of leniency in exchange for my plea of guilty, and if anyone did make such a promise he or she had no authority to do that."  (April 9, 2018 Hrg. at 46, State's Ex. 1 at ¶ 13.)  The State also introduced a copy of the transcript from the change of plea proceedings, which demonstrates that the trial court properly

advised Lehmkuhle of the penalties he faced prior to entering his guilty plea, including the possibility of a maximum prison term of sixty months. The transcript also reveals Lehmkuhle stated on the record that he was satisfied with the services and advice given to him by his former trial counsel. (State Ex. 1 at 38). Where nothing in the record supports a defendant's ineffective assistance of counsel claim other than his own self-serving statements, the record is insufficient to overcome the presumption that the plea was voluntary and properly entered. *See State v. Inskeep*, 2d Dist. Champaign No. 2016-CA-2, 2016-Ohio-7098, ¶ 37. "In such a case, a trial court does not err when it overrules a motion to withdraw a plea pursuant to Crim.R. 32.1." *Id.*

{¶32} Moreover, we also find the trial court did not err in concluding that Lehmkuhle failed to demonstrate that his counsel was ineffective for not contacting Lehmkuhle's father as a potential alibi witness. To the contrary, the record establishes that at the time Lehmkuhle entered his plea, the majority of the evidence supporting the State's case hinged upon the credibility of S.Z.'s statements to several individuals regarding the sexual abuse by her father and her journal entries corroborating her allegations. There is nothing in the record to suggest that Lehmkuhle would have changed his decision to enter a plea based upon trial counsel's conversation with Lehmkuhle's father. Moreover, the record indicates that trial counsel filed a "Notice of Alibi" on July 5, 2012, regarding Lehmkuhle's

whereabouts on certain dates with respect to three of the counts listed in the indictment.

**{¶33}** Therefore, the record supports the trial court's determination that Lehmkuhle did not carry his burden in establishing both the *Strickland* prongs in order to substantiate his ineffective assistance of counsel claim. For all these reasons, we conclude that the trial court did not abuse its discretion in finding that Lehmkuhle failed to establish a "manifest injustice" on the basis of ineffective assistance of his trial counsel sufficient to warrant a post-sentence withdraw of his guilty plea.

**{¶34}** Lehmkuhle also asserts S.Z.'s purported recantation as grounds for establishing that a manifest injustice has occurred in this case. The record reflects that the trial court devoted two days to the hearing on Lehmkuhle's motion to withdraw his plea, the majority of which focused on S.Z.'s recantation. It is axiomatic that witnesses credibility is an issue that the trier of fact must determine. *See e.g. State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, at ¶ 106; *State v. Dye*, 82 Ohio St.3d 323, 329 (1998). The underlying rationale for deferring to the trier of fact on credibility issues is that the trier of fact is best positioned to view the witnesses and to observe their demeanor, gestures and voice inflections and to use those observations to weigh witness credibility. *See Myers v. Garson*, 66 Ohio St.3d 610, 615 (1993); *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶35} Here, the trial court heard extensive testimony from S.Z. regarding her purported recantation of the allegations of sexual abuse against Lehmkuhle as well as her claims that she felt coerced by law enforcement and the prosecuting attorney in 2011 and 2012 to perpetuate the allegations that she now asserts to be false. However, given the testimony from the lead detective and the prosecuting attorney, which starkly contradicts S.Z.'s claims of their coercion, and further casts doubt upon the veracity of her statements at the 2018 hearing, and S.Z.'s own admission on the stand to being a "liar," we cannot conclude that the trial court erred in determining S.Z. was not credible with respect to her recantations of the allegations at the 2018 motion hearing. (June 19, 2018 Hrg. at 22). Therefore, we do not find that the trial court abused its discretion in concluding that S.Z.'s testimony at the motion hearing failed to substantiate that a "manifest injustice" has occurred in this case. Accordingly, the second assignment of error is overruled.

*First Assignment of Error*

{¶36} In his first assignment of error, Lehmkuhle claims that he was denied due process of law because the trial court did not set forth specific findings of fact and conclusions of law in its judgment entry overruling his motion to withdraw his plea. However, Crim.R. 32.1, which governs the withdrawal of guilty pleas, does not require the trial court to make findings of fact and conclusions of law. *See e.g., State v. Parker*, 8th Dist. Cuyahoga No. 106062, 2018-Ohio-1847, ¶ 15; *State v. Galdamez*, 10th Dist. No. 14AP-527, 2015-Ohio-3681, ¶ 46; *State v. McFarland*,

7th Dist. No. 08 JE 25, 2009-Ohio-4391, ¶ 29; *State v. Desellams*, 11th Dist. Lake No. 98-L-053, *12 (Feb.12, 1999). *See, also, State v. Linder*, 8th Dist. Cuyahoga No. 99350, 2013-Ohio-5018, ¶ 9 (stating "[s]uch findings and conclusions assist an appellate court in reviewing the exercise of discretion, but are not required when ruling on a motion to withdraw a guilty plea. * * * Therefore, the fact that the trial court did not make findings of fact and conclusions of law is not grounds for reversal") *Linder*, *supra*, citing *State ex rel. Chavis v. Griffin*, 91 Ohio St.3d 50, 51 (2001).

{¶37} Notwithstanding the numerous appellate districts, noted above, which have held that a trial court has no obligation to state findings of fact and conclusions of law as part of its judgment denying a motion to withdraw a plea, sufficient findings of fact and conclusions of law are those that are comprehensive and pertinent to the issues presented, demonstrate the basis for the decision by the trial court, and are supported by the evidence. *State v. Calhoun*, 86 Ohio St.3d 279 (1999), paragraph three of the syllabus. Here, the trial court issued a seven-page judgment entry detailing the evidence presented at the hearing and setting forth its reasons for overruling Lehmkuhle's motion. Accordingly, we find the trial court's entry provided sufficient notice to Lehmkuhle of its grounds for denying his motion to withdraw his plea, and we further conclude Lehmkuhle's argument that he was denied due process of law is without merit. The first assignment of error is overruled.

{¶38} Based on the foregoing, the assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**