[Cite as *State v. Reddick*, 2023-Ohio-765.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

BREYONA R. REDDICK,

        Defendant-Appellant.

CASE NO. 2022-P-0039

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2020 CR 00292

**O P I N I O N**

Decided: March 13, 2023
Judgment: Affirmed

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Mallorie Thomas*, Patituce & Associates, LLC, 16855 Foltz Industrial Parkway, Strongsville, OH 44149 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Breyona R. Reddick ("Ms. Reddick"), appeals from the judgment of the Portage County Court of Common Pleas, which sentenced her to an indefinite term of imprisonment of ten to 15 years after accepting her guilty plea to one count of involuntary manslaughter. Ms. Reddick's conviction arose from the death of her newborn son, whom she delivered in a bathroom at Hiram College in Portage County.

{¶2} Ms. Reddick raises one assignment of error on appeal, contending that the state committed plain error when it violated the terms of her plea agreement by making "comments" at her sentencing hearing, which impacted the outcome of her sentence.

{¶3}   After a careful review of the record and pertinent law, we find Ms. Reddick's assignment of error to be without merit.  Quite simply, Ms. Reddick has not carried her burden of demonstrating that the sole error identified in her appeal occurred and that it must be corrected to prevent a manifest miscarriage of justice.  A review of the plea agreement and transcripts of the plea and sentencing hearings reveals the state abided by the terms of the parties' agreement that both sides would make their sentencing arguments but that the state would remain silent as to recommending any term of years.  It was agreed that the term of years would be left to the discretion of the judge, and the judge imposed one year less than the maximum penalty.

{¶4}   The judgment of the Portage County Court of Common Pleas is affirmed.

### Substantive and Procedural Facts

{¶5}   In March 2020, a Portage County grand jury indicted Ms. Reddick on one count of aggravated murder, an unclassified felony, in violation of R.C. 2903.01 and R.C. 2929.02; three counts of murder, unclassified felonies, in violation of R.C. 2903.02 and R.C. 2929.02; felonious assault, a second-degree felony, in violation of R.C. 2903.11; endangering children, a second-degree felony, in violation of R.C. 2919.22; tampering with evidence, a third-degree felony, in violation of R.C. 2921.12; and gross abuse of a corpse, a fifth-degree felony, in violation of R.C. 2927.01(B).

{¶6}   Ms. Reddick filed a "Motion to Suppress" any evidence of a "Lung Float Test" or "Hydrostatic Lung Test" (a test used by medical examiners as part of the autopsy protocol to determine whether the infant was alive at birth), asserting that the test performed on the victim by the Cuyahoga County Medical Examiner's Office is inadmissible pursuant to Evid.R. 702 and the holding in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).  Ms.

2

Reddick asserted the prevailing opinion in the medical and scientific community is that the test is not a scientifically reliable test.

{¶7} An evidentiary hearing was held at which Todd M. Barr ("Dr. Barr"), a forensic pathologist and deputy medical examiner at the Cuyahoga County Medical Examiner's office, testified for the state of Ohio. Dr. Barr performed the autopsy on the victim. John C. Hunsaker, III, a semi-retired professor at the University of Kentucky and forensic consultant in the specialty of forensic pathology, testified for Ms. Reddick. While Dr. Hunsaker described the controversy surrounding the use of this test, he testified that he would "probably" use the test as part of his procedure in such a case and that he was not aware of any medical examiner's office prohibiting the use of this test. The trial court overruled the motion, ruling the testimony of Dr. Barr would be admitted.

{¶8} Ms. Reddick ultimately entered into a plea agreement with the state, in which she agreed to plead guilty to one count of involuntary manslaughter, a first-degree felony, in violation of R.C. 2903.04(A) and (C). In exchange, the state agreed to dismiss the balance of the indictment. The plea agreement further provided for a "PSI [pre-sentence investigation], with victim impact statement" and that "[p]arties free to argue, Judge to decide sentence and disposition".

{¶9} At the plea hearing, the following discussion occurred between the state and defense counsel before the court.

{¶10} The prosecutor began by explaining that he was authorized to offer "an amendment to count one of the indictment from its current charge of aggravated murder to a charge of involuntary manslaughter, a felony of the first degree, in violation of Section 2903.04(A) and (C) is the penalty section, with the agreement that we would allow a PSI to be done, put off the sentencing hearing until both sides were ready for a sentencing

3

hearing and Probation had done a full presentence investigative report, would not object to bond continuing the same, allowing Ms. Reddick to remain out to participate in her PSI preparation.

{¶11} "I represented to them that the State would not be picking or asking the court for any specific amount of time. We would not come up and say X or Y or Z. We would allow the PSI to go forward, all the information to come forward, the background information, the defense to make its argument and the State to make its argument and the State was going to leave sentencing up to you, Judge Doherty, after you've heard from all sides.

{¶12} " * * *

{¶13} "[Defense counsel]: I just want it to be clear, when the written plea of guilty states the parties are free to argue, at least it's my understanding that the State of Ohio, I guess for lack of a better term, is not going to argue for any particular sentence.

{¶14} "[The state]: No, we are going to leave it to the court. As I said, we may make statements about the gravity of the situation and the loss, both for the child and for Breyona. This is a horribly, horribly tragic and sad case, but I will not be asking for a prison term. I will not be stating four years, six years, three years, whatever. I don't do that in this court normally unless we have a joint sentencing recommendation and I wasn't authorized to do a joint sentencing recommendation by Mr. Vigluicci. I will really truly be leaving it up to the court. I'm not going to remain silent. I have some things I want to say, to place into the record, but they will not be an amount of time or anything like that."

{¶15} After engaging Ms. Reddick in a Crim.R. 11 colloquy, the court accepted Ms. Reddick's plea of guilty to one count of involuntary manslaughter and referred the matter for a PSI, setting the sentencing hearing for a later date.

4

{¶16} At the sentencing hearing, the state argued to the court:

{¶17} "As the court's aware, [Ms. Reddick] entered a plea of guilty to involuntary manslaughter. There is not a mandatory, under the Ohio sentencing guidelines, a mandatory prison term. It is a presumption under the statute so that leaves that to the discretion of this court. We agreed at the time, as part of our Criminal Rule 11(F) negotiations, to allow the victim impact statement to be made, to allow the defense to present all of its mitigating circumstances and to leave disposition sentencing to you."

{¶18} The state further remarked on the sadness of this case, Ms. Reddick's status as an adult, and the seriousness of her crime and asked the court to "fashion a disposition that it finds appropriate for the involuntary manslaughter charge that [Ms. Reddick] pled to at the Criminal Rule (F) negotiations."

{¶19} After defense counsel and Ms. Reddick spoke on her behalf, the court sentenced Ms. Reddick to an indefinite term of imprisonment of ten years to 15 years.

{¶20} Ms. Reddick raises one assignment of error for our review:

{¶21} "The State committed plain error when it violated the terms of Appellant's plea by making comments as to Appellant's sentence at her sentencing hearing which was an obvious error that impacted the outcome of her sentencing hearing."

## Plea Agreement

{¶22} In her sole assignment of error, Ms. Reddick contends the state violated her plea agreement by making comments as to her sentence at the sentencing hearing, which was an obvious error that impacted the outcome of her sentencing hearing. More specifically, she contends the state asked the trial court on numerous occasions to hold Ms. Reddick "accountable" and implied a term of incarceration is appropriate.

Case No. 2022-P-0039

{¶23} A plea agreement constitutes a contract between the state and a criminal defendant and is subject to the general law of contracts. *State v. Watkins*, 6th Dist. Lucas No. L-15-1213, 2016-Ohio-5756, ¶ 8. Thus, if one side violates a term of the plea agreement, the other party has a right to pursue appropriate remedies, including rescission of the agreement. *Id.*

{¶24} Notably, Ms. Reddick failed to object at sentencing and concedes she has waived all but plain error. *See id.* at ¶ 9; *State v. Montgomery*, 4th Dist. Adams No. 07CA858, 2008-Ohio-4753, ¶ 15-16; *State v. Dudas*, 11th Dist. Lake Nos. 2006-L-267 & 2006-L-268, 2007-Ohio-6739, ¶ 51-54. "'Plain error does not exist unless, but for the error, the outcome of the criminal proceedings would clearly have been different.'" *Watkins* at ¶ 9, quoting *State v. Ferreira*, 6th Dist. Lucas No. L-06-1282, 2007-Ohio-4902, ¶ 11. A reviewing court should notice plain error only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

{¶25} Our review of the record reveals the state abided by its agreement at the sentencing hearing and argued exactly what it promised at the plea hearing. As the prosecutor stated at the plea hearing, "I'm not going to remain silent. I have some things I want to say, to place into the record, but they will not be an amount of time or anything like that." The state was clear that both sides would argue and that it would not recommend a term of imprisonment.

{¶26} Quite simply, this is not a case where the state agreed to remain silent or where the prosecutor failed to make a recommendation. *See, e.g., Watkins* at ¶ 16 (prosecutor breached plea agreement to remain "mute" by providing disparaging information at sentencing); *State v. Jones*, 2d Dist. Montgomery No. 23156, 2009-Ohio-

6

6585, ¶ 31 (state disregarded prior agreement by failing to make agreed recommendation and emphasizing defendant's criminal history and harm caused to his victim). Rather, the state fulfilled the terms of the parties' agreement that explicitly stated both parties would argue, which includes making "comments." *See, e.g.*, *State v. Kocak*, 2016-Ohio-8483, 79 N.E.3d 127, ¶ 35 (7th Dist.) (state did not breach plea agreement by merely stating facts and stood silent as per the parties' agreement that the state would not argue concurrent versus consecutive sentencing).

{¶27} Ms. Reddick has not carried her burden of demonstrating that an error, plain or otherwise, has occurred that should be corrected to prevent a manifest miscarriage of justice. As the Supreme Court of Ohio explained in *Barnes*, there must be (1) an error, or deviation from a legal rule (2) that is plain (an obvious defect in the trial proceedings) (3) that must have affected substantial rights, and (4) that should only be corrected "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage.'" *Id.* at 27, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶28} Ms. Reddick's sole assignment of error is without merit.

{¶29} The judgment of the Portage County Court of Common Pleas is affirmed.


JOHN J. EKLUND, P.J.,

MATT LYNCH, J.,

concur.


7

Case No. 2022-P-0039